CASE NOS. 15-35018 and 15-35179

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ANTHONY PATRICK REED,

Plaintiff /Appellant/Cross-Appellee,

vs.

DOUG LIEURANCE, in his individual capacity; BRIAN GOOTKIN, in his individual capacity; GALLATIN COUNTY SHERIFF'S OFFICE, a department of Gallatin County, and GALLATIN COUNTY,

Defendants/Appellees/Cross-Appellants.

On Appeal from the United States District Court
for the District of Montana, Butte Division
Cause No.: CV 13-17-BU-SEH
The Honorable Sam E. Haddon, Presiding

**APPELLEES/CROSS-APPELLANTS'
PRINCIPAL AND RESPONSE BRIEF**

Steven R. Milch, Esq.
CROWLEY FLECK PLLP
P.O. Box 2529
Billings, MT 59103-2529
(406) 252-3441

*Attorneys for Defendants/Appellees/Cross-Appellants Doug Lieurance, Brian Gootkin, Gallatin County Sheriff's Office, and Gallatin County*

Rebecca K. Smith, Esq.
PUBLIC INTEREST DEFENSE CENTER, PC
P.O. Box 7584
Missoula, MT 59807
(406) 531-8133

Timothy M. Bechtold, Esq.
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435

*Attorneys for Plaintiff/Appellant/Cross-Appellee Anthony Patrick Reed*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii-viii

STATEMENT OF JURISDICTION ................................................... 1

STATEMENT OF THE ISSUES ........................................................ 1

STATEMENT OF THE CASE ............................................................ 2

STATEMENT OF THE FACTS .......................................................... 4

SUMMARY OF THE ARGUMENT .................................................. 11

STANDARD OF REVIEW ................................................................. 16

ARGUMENT ....................................................................................... 17

    I. Plaintiff's Appeal ..................................................................... 17

        A. The Plaintiff Brazenly Misrepresents the Facts and Testimony in the Case ................................................... 17

        B. The Plaintiff's Fourth Amendment Claim Failed Because Probable Cause to Charge Reed with Obstruction Existed as a Matter of Law .................................. 21

        C. The District Court Properly Rejected the Plaintiff's *Monell* Claims ............................................................ 26

        D. The District Court Did Not Abuse its Discretion in Denying Leave to Amend the Complaint ............... 31

        E. The Exclusion of Plaintiff's Expert Timothy Longo Was Not an Abuse of Discretion ................................... 33

        F. Viewing the Evidence in the Light Most Favorable to the Plaintiff, No Reasonable Juror Could Have Found that the Restrictions Involved Here Ran Afoul of the First Amendment ....................................................... 39

(i)  Content Neutrality ................................................................ 43

(ii)  Narrowly Tailored to Serve a Significant Government
        Interest ................................................................................ 44

(iii)  Alternative Channels of Communication .......................... 46

G.   The Plaintiff Failed to Produce a Sufficient Evidentiary
        Basis From Which a Reasonable Juror Could Find That a
        Retaliatory Animus Was the "But-for-Cause" of Deputy
        Lieurance's Conduct ................................................................ 47

H.   Judgment on the First Amendment and Retaliation Claims
        Was Also Proper Because the Plaintiff Was Not Engaged
        in Conduct Protected under the First Amendment .................. 49

I.   The Plaintiff Failed to Object and, therefore, Waived Any
        Perceived Deficiencies in the Rule 50(a) Ruling .................... 50

II.  The District Court Erred in Not Awarding the Defendants their
        Attorney's Fees ........................................................................... 54

CONCLUSION ................................................................................. 60

CERTIFICATE OF SERVICE ............................................................... 61

CERTIFICATE OF COMPLIANCE ........................................................ 61

STATEMENT OF RELATED CASES ...................................................... 61

# TABLE OF AUTHORITIES

## <u>CASES</u>                                                                        Page

*Act Up!/Portland v. Bagley*
988 F.2d 868 (9th Cir. 1993) ................................................................ 23

*Allstate Prop. and Cas. Ins. Co. v. Mirkia*
2014 WL 2801310 (D. Nev. June 19, 2014)......................................... 31

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)................................................................................ 31

*Bd. of Cnty. Comm'rs of Bryan County v. Brown*
520 U.S. 397 (1997)................................................................................ 29

*Beauregard v. Wingard*
362 F.2d 901 (9th Cir. 1966) ................................................................ 23

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007)................................................................................ 31

*Canton v. Harris*
489 U.S. 378 (1989)........................................................................... 29, 30

*City of Los Angeles v. Heller*
475 U.S. 796 (1986).......................................................................... 13, 31

*City of Renton v. Playtime Theatres, Inc.*
475 U.S. 41 (1986)................................................................................... 46

*Coleman v. Quaker Oats Co.*
232 F.3d 1271 (9th Cir. 2000) .............................................................. 32

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*
657 F.3d 936 (9th Cir. 2011) ................................................................ 43

*Connick v. Thompson*
___ U.S. ___, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011)................... 29, 30

*Crowe v. County of San Diego*
608 F.3d 406 (9th Cir. 2010) ........................................................ 12, 26

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)................................ 33, 36

*Daubert v. Merrell Dow Pharm.*
43 F.3d 1311 (9th Cir. 1995) .......................................................... 36

*Edgerly v. City and County of San Francisco*
599 F.3d 946 (9th Cir. 2010) ....................................................... 4, 16

*El-Hakem v. BJY Inc.*
415 F.3d 1068 (9th Cir. 2005) ........................................................ 43

*Ford v. City of Yakima*
706 F.3d 1188 (9th Cir. 2013) ..................................................... 14, 48

*Fordyce v. City of Seattle*
55 F.3d 436 (9th Cir. 1995) .......................................................... 43

*Fox v. Vice*
___ U.S. ___, 131 S.Ct. 2205, 180 L.Ed.2d 45 (2011)................................... 55

*Freeman v. City of Santa Ana*
68 F.3d 1180 (9th Cir. 1995) ........................................................... 23

*Galen v. County of Los Angeles*
477 F.3d 652 (9th Cir. 2007) ......................................................... 54

*Graves v. City of Coeur D'Alene*
339 F.3d 828 (9th Cir. 2003) ..................................................... 15, 51

*Guidroz-Brault v. Missouri Pac. R. Co.*
254 F.3d 825 (9th Cir. 2001) ................................................... 13, 34, 35

*Haflich v. McLeod*
2011 WL 65877 (D.Mont. 2011)...................................................... 13, 36

*Harris v. Maricopa County Sup. Ct.*
631 F.3d 963 (9th Cir. 2011) ........................................................ 29, 55

*Hiibel v. Sixth Jud. Dist. Court*
542 U.S. 177 (2004) ...................................................................... 15, 52

*Hill v. Colorado*
530 U.S. 703 (2000) ...................................................................... 44, 45

*Jackson v. City of Bremerton*
268 F.3d 646 (9th Cir. 2001) ........................................................ 12, 31

*Jensen v. Stangel*
762 F.2d 815 (9th Cir. 1985) ........................................................ 55, 60

*Johnson v. American Honda Motor Co., Inc.*
923 F.Supp.2d 1269 (D.Mont. 2013) ............................................... 35, 36

*Johnson v. Mammoth Recreations, Inc.*
975 F.2d 604 (9th Cir. 1992) ............................................................. 32

*Karam v. City of Burbank*
352 F.3d 1188 (9th Cir. 2003) ...................................................... 14, 54

*Kohler v. Flava Enters., Inc.*
779 F.3d 1016 (9th Cir. 2015). .......................................................... 17

*Lacey v. Maricopa County*
693 F.3d 896 (9th Cir. 2012) ............................................................. 48

*Lacy v. County of Maricopa*
631 F.Supp.2d 1183 (D.Ariz. 2008) ...................................................... 22

*Malley v. Briggs*
475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ..................... 12, 26

*Margolis v. Ryan*
140 F.3d 850 (9th Cir. 1998) ........................................................ 55, 57

*Mendocino Envtl. Ctr. v. Mendocino County*
14 F.3d 457 (9th Cir. 1994) ................................................................... 48

*Menotti v. City of Seattle*
409 F.3d 1113 (9th Cir. 2005) ......................................................... 45, 46

*Nuveen Quality Income Mut. Fund, Inc. v. Prudential Equity Group, LLC*
262 Fed.Appx. 822 (9th Cir. 2008) ........................................................ 34

*Olsen v. Henderson*
2014 WL 3661150 (D.Nev. July 23, 2014) ........................................... 56

*Oram v. Dolan*
2012 WL 5987187 (D.Mont. Aug. 2, 2012) .......................................... 21

*Peng v. Penghu*
335 F.3d 970 (9th Cir. 2003), cert. denied, 540 U.S. 1218 (2004) ................. 22, 23

*Powell v. Union Pac. Railroad Co.*
2013 WL 1857893 (E.D.Cal. 2013) ....................................................... 38

*Reiner v. Warren Resort Hotels, Inc.*
2008 WL 5120682 (D. Mont. Oct. 1, 2008) .......................................... 34

*Rosenbaum v. Washoe County*
663 F.3d 1071 (9th Cir. 2011) .............................................................. 22

*Santos v. Gates*
287 F.3d 846 (9th Cir. 2002) ................................................................ 42

*Schacht v. Wisconsin Dep't of Corr.*
175 F.3d 497 (7th Cir. 1999) ............................................................... 32

*Skoog v. County of Clackamas*
469 F.3d 1221 (9th Cir. 2006) .............................................................. 48

*Smith v. State of New Jersey*
2013 WL 3658786 (D.N.J. 2013) ............................................. 36, 37, 38, 39, 40

*Stilwell v. Smith & Nephew, Inc.*
482 F.3d 1187 (9th Cir. 2007) ................................................................ 14, 36

*Summers v. Delta Air Lines, Inc.*
508 F.3d 923 (9th Cir. 2007) ................................................. 15, 52, 53

*Torres v. City of Los Angeles*
548 F.3d 1197 (9th Cir. 2008) ............................................................ 42

*Trimble v. City of Santa Rosa*
49 F.3d 583 (9th Cir. 1995) ................................................................. 27

*United States v. Baugh*
187 F.3d 1037 (9th Cir. 1999). ........................................................... 45

*United States v. Cordoba*
194 F.3d 1053 (9th Cir. 1999) ............................................................ 33

*United States v. Gourde*
440 F.3d 1065 (9th Cir. 2006) ............................................................ 23

*United States v. Griefen*
200 F.3d 1256 (9th Cir. 2000) ..................................................... 43, 44

*United States v. Taylor*
54 F.3d 967 (1st Cir. 1995) ................................................................. 17

*United States v. Verduzco*
373 F.3d 1022 (9th Cir. 2004) ............................................................ 17

*Vernon v. City of Los Angeles*
27 F.3d 1385 (9th Cir. 1994) ............................................................... 54

*Wallace v. McGlothan*
606 F.3d 410 (7th Cir. 2010) ........................................................ 15, 52

*Ward v. Circus Circus Casinos, Inc.*
473 F.3d 994 (9th Cir. 2007) ................................................... 13, 17, 33

vii

*Ward v. Rock Against Racism*
491 U.S. 781 (1989) ............................................................... 44, 45

*Waters v. Weyerhaeuser Mortg. Co.*
582 F.2d 503 (9th Cir. 1978) ........................................... 13, 33

*Williams v. Runyon*
130 F.3d 568 (3d Cir. 1997) ................................................... 53

*Young v. City of Los Angeles*
655 F.3d 1156 (9th Cir. 2011) ........................................ 14, 49

*Yousefian v. City of Glendale*
779 F.3d 1010 (9th Cir. 2015) ............................................... 22

## STATUTES AND RULES

Mont. Code Ann. § 45-7-302(1) .................................... 8, 24, 25, 26

28 U.S.C. § 1291 ......................................................................... 1

28 U.S.C. § 1331 ......................................................................... 1

28 U.S.C. § 1343 ......................................................................... 1

42 U.S.C. § 1983 ................................... 1, 12, 29, 31, 36, 38, 54

42 U.S.C. § 1988 ....................................................................... 55

Fed. R. Civ. P. 16 ................................................................. 13, 32

Fed. R. Civ. P. 50 (a)(1) ...................................................... 42, 58

Fed. R. Evid. 702 ............................................. 13, 34, 35, 36, 40

## OTHER AUTHORITIES

9B C. Wright & A. Miller,
*Federal Practice and Procedure* § 2537 (3d ed. 2008) ...................................... 52

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1983. The District Court also had supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. This Court has jurisdiction over the appeals pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.  Whether the District Court erred in granting summary judgment on the plaintiff's Fourth Amendment and *Monell* claims.

2.  Whether the District Court abused its discretion in denying leave to amend the Complaint.

3.  Whether the District Court abused its discretion by excluding plaintiff's expert Timothy Longo.

4.  Whether the District Court erred in granting judgment as a matter of law on the plaintiff's First Amendment and First Amendment retaliation claims.

5.  Whether the plaintiff failed to object and, therefore, waived any perceived deficiencies in the District Court's Rule 50(a) ruling.

6.  Whether the District Court erred in not awarding the defendants their attorney's fees for having to defend against the plaintiff's frivolous claims.

## STATEMENT OF THE CASE

The plaintiff initiated this civil rights action by filing a 37-page complaint on March 18, 2013.  **[CR 1]**.  The action arises from a bison hazing operation being conducted by the Montana Department of Livestock (DOL) on May 23, 2012, which involved moving wild bison from an area near the town of West Yellowstone, Montana, eastward across U.S. Highway 191, and back into Yellowstone National Park.

During a motions hearing held on July 23, 2014, the District Court made various oral rulings on pending cross-motions for summary judgment.  *Motions Transcript, (Tr.) at 58:6 – 76:14* **[SER F; CR 44]**.  By separate Order dated July 23, 2014, the District Court granted summary judgment to the defendants/appellees on the plaintiff's Claim One (Unreasonable Seizure under the U.S. Constitution) and the corresponding state law Claim Five (Unreasonable Seizure/Violation of Privacy under the Montana Constitution).  *Order, July 23, 2014* **[SER E; CR 45]**.  The District Court also granted summary judgment to defendants/appellees on the plaintiff's *Monell* claims in Claim Four (Unconstitutional Policy/Failure to Train/Supervisory Liability).  *Id*.

On August 20, 2014, the plaintiff filed a Motion for Leave to File Amended Complaint **[CR 50]**, and a Motion to Alter or Amend Judgment **[CR 52]**.  By Order dated October 6, 2014, the District Court denied both motions.  *Order,*

*October 6, 2014.* **[SER D; CR 68]**. The case proceeded to trial on the plaintiff's remaining claims.

On January 7, 2015, and at the close of the plaintiff's case, the District Court granted judgment as a matter of law to the defendants/appellees on the plaintiff's Claim Two (Unreasonable restriction of First Amendment rights under U.S. Constitution), Claim Three (First Amendment Retaliation under U.S. Constitution), and Claim Six (Unreasonable restriction of freedom of speech, press, and assembly under the Montana Constitution). *Trial Transcript (Tr.) at 360:24 – 374:20* **[SER H; CR 95]**. The District Court entered judgment in favor of the defendants/appellees and against plaintiff on January 8, 2015. **[SER B; CR 96]**.

On January 8, 2015, the plaintiff filed a notice of appeal. **[CR 97]**. On January 20, 2015, the defendants/appellees moved for an award of attorney's fees. **[CR 107]**. The District Court denied the motion by Order dated March 6, 2015. **[SER A; CR 123]**. On March 9, 2015, the defendants filed a timely notice of appeal. **[SER G; CR 124]**. On motion of the defendants/appellees, this Court consolidated the appeals by Order dated March 11, 2015.

3

## STATEMENT OF THE FACTS[1]

On May 23, 2012, the Montana Department of Livestock (DOL) was conducting a bison hazing operation which involved moving bison from the area of the Madison Arm Resort eastward across Hwy 191, and back into Yellowstone National Park (YNP). *Tierney Testimony*, *Tr. at 262:13-16; id*. at 287:17 – 288:6 **[SER H]**. DOL Agent Rob Tierney is the Bison Program Manager for the DOL, and it is his responsibility to oversee bison management operations outside of YNP. *Tr. at 285:12-18*. He was in charge of the bison hazing operations on that date. *Tr. at 288:7-8*. Deputies Doug Lieurance and Mark Hernandez of the Gallatin County Sheriff's Office (GCSO) were requested to and were providing law enforcement assistance to the DOL's hazing operation. *Tr. at 288:9-21*.

During the haze, and as the bison herd got closer to Hwy 191, Agent Tierney instructed Deputy Lieurance to locate his law enforcement vehicle at a designated point on the north side of the Madison River where Ecology Lane intersects with Hwy 191 in preparation for shutting down southbound traffic on the highway.

---

1 In general, in reviewing a District Court's summary judgment rulings, this Court considers evidence submitted in connection with the parties' motions, which consist primarily of affidavits and pretrial depositions. *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 951 (9th Cir. 2010). Conversely, in reviewing a District Court's Rule 50(a) rulings, this Court considers only the evidence presented at trial. *Id*. at 951. Here, and as was the case in *Edgerly*, *id*. at 951-52, there is no significant differences between the pretrial depositions and affidavits, and the trial testimony. See *Tierney Aff.* **[CR 14-1]**; *Lieurance Aff.* **[CR 14-2]**; *Reed Depo Excerpts* **[CR 15-3]**; *Tierney 2d Aff.* **[CR 31-1]**. Consequently, the appellees' description of the relevant facts is taken from the testimony at trial.

*Tierney Testimony, Tr. at 289:11 – 290:4* **[SER H]**. That specific location was chosen because "[t]hose bison will go back and forth across that river and can proceed anywhere in between there." *Id*. at 289:18-19. There is also a large downhill slope from Ecology Lane down to the river and, "for public safety reasons," they want a lot of visibility for stopping traffic on Hwy 191. *Id*. at 289:20 – 290:4; see also *id*. at 291:4-11 (explaining that its difficult to stop a semi "rolling 70 miles an hour" on a downhill slope).

Agent Tierney located his law enforcement vehicle at a point on the south side of the Madison River where Conservation Lane intersects with Hwy 191 in preparation for shutting down northbound traffic on the highway. *Tierney Testimony, Tr. at 291:8-16* **[SER H]**. The distance between those two points on Hwy 191 is approximately 0.9 mile. *Tr. at 338:18-20*. A map of the relevant area was admitted at trial as Defendants' Trial Exhibit 11. **[SER I; CR 99-5]**.

Agent Tierney's objective was to establish and maintain a safe corridor for movement of the bison across Hwy 191. *Tierney Testimony, Tr. at 291:20 – 292:12* **[SER H]**. Because it is impossible "to predict precisely where the hazing operation is going to actually cross Highway 191," it was imperative that the corridor over Hwy 191 be sufficiently wide. *Id*; see also *Tr. at 267:9-15* ("Once again, you know, you're working with wild animals and wildlife, and there's no exact spot where you're going to get them to cross. Pardon the phrase; it's like

5

herding cats. You never know where it's going to be, so that's why we have that corridor there. The intent is to get them across 191 and back into Yellowstone, whatever is easiest and however they're going to go."); *Tr. at 234:9-12* ("You know, the bison tend to move different directions, and, you know, we do our best to create a wide enough gap, you know, with traffic control on either side of Highway 191 so that bison can safely move through."). If a vehicle is parked within the corridor, it can "distract the buffalo, causing them to go different directions." *Tr. at 323:21-22*. "They can also be a problem as far as the buffalo either hitting the vehicle or the vehicle hitting the buffalo." *Id.* at 323:22-24.

Two vehicles containing Buffalo Field Campaign (BFC) activists were present during the bison haze. *Reed Testimony, Tr. at 140:5-7* **[SER H]**. The driver of one of the BFC vehicles was the plaintiff Anthony Reed. He had a female passenger, Kasi Craddock, with him who was acting as a videocamera operator. The other vehicle also contained two BFC activists, one of whom was also acting as a videocamera operator. *Id.* at 140:8 – 141:10.

After following in front of the haze as it proceeded eastward from the area of the Madison Arm Resort towards Hwy 191, Reed drove out to and parked his vehicle alongside Hwy 191 at a point where the Madison Arm Resort road intersects with the highway, and within the corridor that the DOL was trying to establish for the bison. *Reed Testimony, Tr. at 121:21 – 122:8; Tierney Testimony,*

*Tr. at 292:13-16* **[SER H]**. DOL Agent Tierney went to Reed's vehicle and instructed him that he was parked in an area where the "bison may be coming through." *Tr. at 266:13-14.* He instructed Reed that he could locate his vehicle on either the north or south ends of the highway behind the blockading law enforcement vehicles, but that he could not park between them or within the corridor they were establishing over Hwy 191. *Tr. at 269:11-16* ("What I advised him was that he could move north of Deputy Lieurance or I was going to turn and go back and stop traffic, northbound traffic on the south end, and he could be behind us, the same as every other person or [member of the] public. They have to be behind [the blockading vehicles]. It's just a public safety situation.").

Reed then left and proceeded northward along Hwy 191 towards where Deputy Lieurance's vehicle was located. *Tr. at 268:1-3* **[SER H]**. Contrary to Agent Tierney's instructions, however, Reed parked his vehicle "probably 75 yards past the Madison River Bridge off on the right," *Tr. at 268:15-19*, and "between the two blockading law enforcement vehicles" and "within the corridor" they were trying to establish for the bison. *Tr. at 292:25 – 293:4.*

Agent Tierney radioed Deputy Lieurance and "inform[ed] him of the situation." *Tr. at 293:8-10* **[SER H]**. Agent Tierney also informed Deputy Lieurance that he had "explicitly" instructed Reed where he could park "three times." *Lieurance Testimony, Tr. at 340:18-20.* At that time, Agent Tierney and

Deputy Lieurance were "just waiting for the word from the horseback riders to shut down the highway." *Tr. at 293:11-14*. Due to the cool temperatures on that day, the bison were moving faster than normal and soon would be approaching Hwy 191. *Tr. at 294:9-18*.

At approximately 0918, Deputy Lieurance had to instruct the horseback riders to stop the hazing operation so he could "go speak to Mr. Reed," and have him remove his vehicle from its location within the corridor. *Tr. at 340:4-25* **[SER H]**. Deputy Lieurance asked Reed why he disregarded instructions as to where he could park, and explained to him "that it was obviously a safety issue." *Supplemental Report, p. 1* **[SER L; CR 99-3]**.[2] Reed only answered by saying, "I'm not interfering with the haze." *Id*.

Deputy Lieurance issued a citation to Reed for violating the following Montana obstruction statute:

> **45-7-302.  Obstructing peace officer or other public servant.**
> (1) A person commits the offense of obstructing a peace officer or public servant if the person knowingly obstructs, impairs, or hinders the enforcement of the criminal law, the preservation of the peace, or the performance of a governmental function, including service of process.

§ 45-7-302(1), Mont. Code Ann.

---

[2]  Deputy Lieurance's Supplemental Report was introduced as an exhibit during the summary judgment cross-motions.  **[CR 22-15]**.  It was also admitted at trial as Plaintiff's Exhibit 5.  **[CR 99-3]**.

After receiving the citation, Reed did not immediately leave that location. *Tr. at 341:11-13* **[SER H]**. Instead, both Reed and his female companion Craddock "wanted to continue to argue" that they were not doing anything wrong. *Supplemental Report, p. 2* **[SER L]**. Deputy Lieurance was aware that the bison herd was in close proximity to Hwy 191 when he had stopped the hazing operation. *Tr. at 341:14-25*. Significantly, although the haze itself had been stopped, the bison were "still moving" towards Hwy 191. *Id.;* see also *Tr. at 234:17-20* ("The bison don't know to stop. There's no command you can give them to stop. So when the riders stop and stop putting pressure on the bison, the bison are still doing what they do. They move."). Consequently, "there [was] some urgency in getting Mr. Reed to leave that location." *Id*. It was imperative that Agent Tierney and Deputy Lieurance "get back in position in order to stop traffic on Highway 191." *Id*. at 342:1-3.

Finally, Deputy Lieurance told Reed and Craddock that "they needed to leave now or both would be physically arrested and taken to jail." *Supplemental Report, p. 2*. It was *not* Deputy Lieurance's intent "to chill Mr. Reed from exercising his First Amendment rights." *Tr. at 342:17-19*. Rather, the jail threat emanated from the undisputed fact that, after receiving the citation, Reed was *not moving his vehicle out of that location*, and its continued obstructed presence in the

9

corridor was preventing Agent Tierney and Deputy Lieurance from getting back into position to stop traffic on Hwy 191.

Once Reed and Craddock finally left that location within the corridor, Deputy Lieurance and Agent Tierney got back into their positions on Hwy 191 in preparation for stopping the northbound and southbound traffic, and the hazing operation was recommenced. *Tr. at 342:22 – 343:3* **[SER H]**. Within "[a] few minutes," the horseback riders radioed Deputy Lieurance and Agent Tierney and informed them that they were close enough to the highway, and to blockade the road. *Tr. at 343:7-12*; *id*. *at 347:4-11*.

Reed, other BFC activists, and members of the public were *not* "prohibited from viewing and videotaping the bison haze on May 23, 2012." *Tr. at 296:1-12* **[SER H]**. BFC activists, including Reed, were permitted to follow the horseback riders and videotape the operation as the haze headed eastward towards Hwy 191, and back into Yellowstone National Park. *Id.* BFC activists and members of the public were permitted to park their vehicles alongside Hwy 191, on either side of the blockading law enforcement vehicles, and observe and videotape the haze as it proceeded over Hwy 191.

In response to a subpoena issued by the defendants, the Buffalo Field Campaign (BFC) produced a DVD containing video footage of the bison hazing operation on May 23, 2012. The DVD was admitted at trial as Defendants' Trial

Exhibit 12. **[CR 99]**. As the subpoenaed BFC video footage of the haze operation on that date conclusively demonstrates, ample opportunities existed by which to view and videotape the haze.

While Reed claims he could not see the hazing operation cross Hwy 191 from behind Deputy Lieurance's blockading law enforcement vehicle on the northern end of Hwy 191, it is patently undisputed that he could have observed the hazing operation cross Hwy 191 if he had *chosen instead* to park on the south end of Hwy 191 behind DOL Agent Tierney's blockading law enforcement vehicle. See *Tr. at 283:21-24* (Agent Tierney testimony that Reed could have watched the operation cross the highway from behind his blockading law enforcement vehicle); see also *Tr. at 270:13-22* ("He had the opportunity to either go behind myself or Officer Lieurance. . . . [H]e chose to go the other direction."); *Tr. at 368:5-9* (Judge Haddon finding that "the evidence is also clear that the plaintiff was given the opportunity, at least at the south end of this no-drive zone, to have placed his vehicle at a location where he could have exercised his options to view the haze operation as it crossed the highway.").

## SUMMARY OF THE ARGUMENT

The plaintiff's Fourth Amendment claim, and the analogous claim under the Montana Constitution, failed because probable cause plainly existed to charge the plaintiff with misdemeanor obstruction under Montana law. Alternatively, because

11

qualified immunity protects all "but the plainly incompetent or those who knowingly violate the law," a law enforcement officer will be immune to claims based on an arrest without probable cause unless "it is obvious that no reasonably competent officer" would have believed that there was probable cause to arrest. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *see also Crowe v. County of San Diego*, 608 F.3d 406, 434 (9th Cir. 2010) (law enforcement officers entitled to qualified immunity "because they could have reasonably believed that probable cause existed").

The District Court properly granted summary judgment on the plaintiff's *Monell* claims, and did not abuse its discretion in denying leave to amend the *Monell* claims after its summary judgment ruling. First, Deputy Lieurance was more than adequately trained on the parameters of the First and Fourth Amendments, as well as the application of Montana's obstruction statute. Secondly, the plaintiff produced no evidence which demonstrated the requisite "deliberate indifference" standard necessary to support his *Monell* claims. Finally, having failed to establish a constitutional violation in the case, the plaintiff's *Monell* claims necessarily failed on that basis as well. *See Jackson v. City of Bremerton*, 268 F.3d 646, 653-54 (9th Cir. 2001) ("Neither a municipality nor a supervisor . . . can be held liable under § 1983 where no injury or constitutional

violation has occurred.") (*citing City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

The District Court did not abuse its discretion in denying leave to amend the complaint. The Court had already granted summary judgment on the *Monell* claims, which the plaintiff was improperly seeking to amend. In addition, the deadline for amending pleadings had lapsed a year earlier, and the plaintiff had failed to establish the requisite good cause for seeking the amendment under Fed. R. Civ. P. 16. Furthermore, the District Court has discretion to deny a motion to amend for failure to attach a proposed pleading to the motion as required by local rules. *See Waters v. Weyerhaeuser Mortg. Co.*, 582 F.2d 503, 507 (9th Cir. 1978); *see also Ward v. Circus Circus Casinos, Inc.,* 473 F.3d 994, 1000 (9th Cir. 2007) ("The [plaintiffs'] motion to amend violated the local rules, and the district court may in its discretion deny their motion on that basis alone.").

The District Court did not abuse its broad discretion in excluding the testimony of plaintiff's expert Timothy Longo. Mr. Longo's proffered testimony "was not sufficiently founded on [the] facts" of the case. *Guidroz-Brault v. Missouri Pac. R. Co.,* 254 F.3d 825, 830-31 (9th Cir. 2001). Moreover, Mr. Longo's proffered testimony and opinions did not "fit" the constitutional issues involved in the case, and was therefore subject to exclusion for failure to satisfy the requirements of Fed. R. Civ. P. 702. *See Haflich v. McLeod*, 2011 WL 65877,

13

at *1 (D.Mont. 2011) ("The opinions must 'fit' the facts of the case and serve a 'helpful' purpose to the jury, and there must exist 'a link between the expert's testimony and the matter to be proved.'") (*quoting Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007)).

The District Court properly granted judgment as a matter of law to the defendants on the plaintiff's First Amendment and First Amendment retaliation claims. No reasonable juror could have found that the restrictions placed on where the plaintiff could park his vehicle ran afoul of the First Amendment. The plaintiff also failed to produce a "sufficient evidentiary basis" from which a reasonable juror could find that a retaliatory animus was the "but-for" cause of Deputy Lieurance's conduct. *See Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013) ("[T]he evidence must enable [the plaintiff] ultimately to prove that the [defendant's] desire to chill his speech was a but-for cause of [his] allegedly unlawful conduct."); *see also Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) (holding in the First Amendment retaliation context that "[plaintiff's] speculation as to [defendant's] improper motive does not rise to the level of evidence sufficient to survive summary judgment").

Judgment on the First Amendment and retaliation claims was also proper because the plaintiff was not engaged in conduct protected under the First Amendment. *See Young v. City of Los Angeles*, 655 F.3d 1156, 1170 (9th Cir.

2011) (holding that plaintiff's arrest did not violate his rights under the First Amendment because plaintiff's refusal to obey the law enforcement officer's lawful instructions was not an act of speech or expression protected by the First Amendment).

The plaintiff failed to object to the District Court's Rule 50(a) ruling on grounds that it included additional legal bases not specifically raised in defendants' oral Rule 50(a) motion, and did not otherwise afford the District Court an opportunity to correct what the plaintiff now perceives to be errors on appeal. *See Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 925, 927 (9th Cir. 2007) (emphasizing that the plaintiff "immediately objected" that district court's Rule 50(a) ruling included additional bases not raised in defendants' Rule 50(a) motion). As such, the plaintiff failed to preserve the issues, and has waived any perceived deficiencies in the District Court's Rule 50(a) ruling on appeal. *See Graves v. City of Coeur D'Alene*, 339 F.3d 828, 838-39 (9th Cir. 2003) (holding that when a party does not object to Rule 50(a) rulings in district court, the procedural flaw is waived on appeal), *abrogated on other grounds* by *Hiibel v. Sixth Jud. Dist. Court*, 542 U.S. 177 (2004); *Wallace v. McGlothan*, 606 F.3d 410, 419 (7th Cir. 2010) ("A plaintiff's challenge to a defendant's failure to adhere to the procedural prerequisites of Rule 50(a) and (b) is waivable."); 9B C. Wright & A. Miller, *Federal Practice and Procedure* § 2537 (3d ed. 2008) ("[I]f the opposing party

does not object to or specifically argue against the assertion of a new ground for seeking judgment as a matter of law, that party may have waived that defense to the grant of the motion on appeal."); *see also id.* at § 2533 ("[I]f the trial court grants the [Rule 50(a)] motion, an adverse party who did not object to the lack of any statement of grounds in the trial court may not raise this point in the appellate court.").

All of the plaintiff's claims in this lawsuit were frivolous, and lacked factual and legal foundation. The plaintiff wrongfully claimed that he was entitled under the federal and Montana Constitutions to place himself in harm's way between two (2) blockading law enforcement vehicles who were stopping northbound and southbound traffic on U.S. Highway 191 because the Montana Department of Livestock was going to run a bunch of bison over the road. The District Court erred in declining to award attorney's fees to defendants for having to defend against these baseless claims.

**STANDARD OF REVIEW**

This Court reviews *de novo* a district court's order granting summary judgment, as well as an order granting a motion for judgment as a matter of law under Rule 50(a). *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 953, 960 (9th Cir. 2010). A district court's decision to deny a motion for attorney's

16

fees is reviewed for abuse of discretion. *Kohler v. Flava Enters., Inc.,* 779 F.3d 1016, 1018 (9th Cir. 2015).

This Court reviews a district court's denial of a motion to amend a complaint for an abuse of discretion. *Ward v. Circus Circus Casinos, Inc.,* 473 F.3d 994, 1000 (9th Cir. 2007). When a motion to amend a complaint violates local rules, "the district court may in its discretion deny their motion on that basis alone." *Id*. at 1000.

This Court reviews decisions to exclude expert testimony for abuse of discretion, *United States v. Verduzco*, 373 F.3d 1022, 1032 (9th Cir. 2004), and has stressed that the "trial court has broad discretion to admit or exclude expert testimony." *Id.* at 1032 n.6.

## ARGUMENT

### I.    Plaintiff's Appeal

#### A.    The Plaintiff Brazenly Misrepresents the Facts and Testimony in the Case.

The plaintiff's claims in this case were always based upon the faulty premise that it was somehow predestined and preordained that the bison herd was going to neatly cross Hwy 191 at the point where Conservation Lane intersects with Hwy 191, and where the plaintiff had initially parked his vehicle. The plaintiff has denoted that point as Location A on the map contained in his opening brief. *See*

17

*Appellant's Opening Br.*, p. 5.  This underlying premise was both false and

untenable, and found *absolutely no support* in the factual record.

Nevertheless, the plaintiff irresponsibly and brazenly misrepresents to this

Court that this underlying and mistaken premise was supported by the factual

record in the case.  On page 10 of his opening brief, and purporting to rely upon

the record, the plaintiff states as follows:

> Eventually, the herding operation traveled along Madison Arm Road,
> crossed Highway 191, and continued east along Conservation Lane
> towards Yellowstone National Park.  ER101-102, 175-176, 185B
> (dashed arrows),409.

The plaintiff's purported citations to the record plainly do not support that

erroneous statement.

ER 101-102 are two pages of Deputy Mark Hernandez's trial testimony.

Deputy Hernandez had generally followed the horseback riders in his patrol car as

he drove eastward along Madison Arm Road until it reached Hwy 191.  He did *not*

testify that the bison herd crossed the highway at the intersection of Madison Arm

Road and Hwy 191.  Rather, Deputy Hernandez testified that the bison were north

of Madison Arm Road, south of the road, and on the road.  *Tr. at 233:16-19* **[SER**

**H]**.  "They were all over the place."  *Id*. at 233:19-20.  Directly contrary to the

plaintiff's misrepresentations, Deputy Hernandez testified that the bison were "not

all bunched up in one little spot."  *Id.* at 233:21-23.  In fact, he testified that some

of the bison were "as far north as the Madison River," *id.* at 234:1-3, and that "some of them went into the water." *Id*. at 234:5-6.

ER 175-176 are two pages of plaintiff Reed's pretrial deposition transcript wherein he purports to draw the hazing operation's route as it crossed Hwy 191 on the map which the plaintiff has labeled ER 185B. During his deposition, however, the plaintiff Reed candidly admitted that he *has no personal knowledge* as to where the hazing operation crossed Hwy 191:

**Q. Where did the haze cross 191?**

A. Where the Madison Arm Road meets up with 191 and across at Conservation Lane.

**Q. And how do you know that?**

A. How do I know that that's where it went?

**Q. Right.**

A. Tierney told me that that's what they were going to do, and we have our other patrol that followed it and saw the end of it, or at least the riders.

**Q. And you're referring to the vehicle that had Cindy Rosin and Don Spates in it?**

A. Yes.

**Q. So Cindy Rosin and Don Spates, who were behind the horseback riders, saw the haze cross 191 at that location?**

A. I don't know if I would say that they saw the whole haze crossing, but they saw the end of it with the riders going at least down Conservation Lane.

19

\* \* \*

**Q. So you have no personal knowledge that the haze actually crossed 191 at that location, right?**

A. <u>I have no firsthand knowledge</u>.

*Reed Depo*., pp. 32-34 (emphasis added) **[CR 76-3]**.

In fact, the plaintiff presented *absolutely no evidence* as to where the bison actually crossed Hwy 191. There was testimony at trial that the bison had "fanned out" or scattered as they approached Hwy 191, and that portions of the haze were as far north in the corridor as the Madison River, and in close proximity to where the plaintiff had been parked when he received the obstruction citation. *Tr.* at pp. 233-34, 267, 292, 298-99, 308, 309-310, 362-63 **[SER H]**.

Indeed, in ruling on the defendants' Rule 50 motion at the close of the plaintiff's case, the Court itself acknowledged as follows:

> The reasonableness of these safety precautions, particularly the parameters established, is challenged on this record, in reality, only by the plaintiff's assertion that he was entitled to remain at what he considered a preferred location to see where the crossing was - - of the animals across the highway was expected to take place. <u>It is also, however, clear that this record does not establish specifically where that occurred except that it occurred at some location south of the Madison River.</u>

*Tr.* at 364:19 – 365:2 (emphasis added). Accordingly, the plaintiff's repeated contentions that he was 0.60 mile away from the operation when it crossed the

highway are a complete and utter fabrication, and finds no evidentiary support in the record.

In his opening brief, the plaintiff also makes the follow misrepresentation:

Sheriff Gootkin confirmed that the location of Reed's parked vehicle would not have interrupted the operation.

*Appellant's Opening Br.*, p. 24 (*citing* ER 309-310); *see also id.* at p. 10 (stating that Gallatin County Sheriff Brian Gootkin admitted that the operation "would have gone on fine if they would have let [Reed] alone to observe from that location") (*citing* ER 309-310).

This misrepresentation is particularly deceitful. Sheriff Gootkin was not present during the hazing operation on May 23, 2012, and he has no personal knowledge of the facts involved in that event. As the plaintiff's deposition transcript makes abundantly clear (ER 309-310), Sheriff Gootkin was simply responding to a hypothetical posed by the plaintiff's counsel which was wholly unrelated to the undisputed facts in the case. Plaintiff's counsel's perceived advocacy has apparently clouded her ability to exercise candor with this Court.

## B. **The Plaintiff's Fourth Amendment Claim Failed Because Probable Cause to Charge Reed with Obstruction Existed as a Matter of Law.**

"Probable cause to arrest or detain is an absolute defense to any claim under §1983 against police officers for wrongful arrest or false imprisonment, as the lack of probable cause is a necessary element of each." *Oram v. Dolan*, 2012 WL

5987187, at *7 (D.Mont. Aug. 2, 2012) (*quoting Lacy v. County of Maricopa*, 631

F.Supp.2d 1183, 1193 (D.Ariz. 2008)).  *See also Yousefian v. City of Glendale*,

779 F.3d 1010, 1014 (9th Cir. 2015) ("The absence of probable cause is a necessary

element of §1983 false arrest and malicious prosecution claims.").  In *Rosenbaum*

*v. Washoe County*, 663 F.3d 1071 (9th Cir. 2011), the Ninth Circuit held as follows:

"In the context of an unlawful arrest, . . . the two prongs of the qualified immunity

analysis can be summarized as:  (1) whether there was probable cause for the

arrest; and (2) whether it is *reasonably arguable* that there was probable cause for

arrest – that is, whether reasonable officers could disagree as to the legality of the

arrest such that the arresting officer is entitled to qualified immunity." *Id*. at 1076

(Court's emphasis).

An officer has probable cause "when the facts and circumstances within his

knowledge are sufficient for a reasonably prudent person to believe that the suspect

has committed a crime." *Rosenbaum*, 663 F.3d at 1076 (citation omitted).  The

analysis involves both facts and law. *Id*. "The facts are those that were known to

the officer at the time of the arrest.  The law is the criminal statute to which those

facts apply." *Id*.  *See also Peng v. Penghu*, 335 F.3d 970, 976 (9th Cir. 2003), cert.

denied, 540 U.S. 1218 (2004) ("Probable cause [to arrest] exists when, under the

totality of the circumstances known to the arresting officers, a prudent person

would have concluded that there was a fair probability that the suspect had

committed a crime."). "[P]robable cause means 'fair probability,' not certainty or even a preponderance of the evidence." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006)(en banc). Whether charges are later dismissed does not affect the determination of whether probable cause existed to support the arrest. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995); *see also Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1966).

The existence of probable cause can be determined by the Court as a matter of law. "[W]hether a reasonable officer could have believed probable cause . . . existed . . . is 'an essentially legal question' that should be determined by the district court at the earliest possible point in the litigation." *Peng*, 335 F.3d at 979 (*quoting Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993)). *See also Bagley*, 988 F.2d at 873 ("The determination of whether the facts alleged could support a reasonable belief in the existence of probable cause . . . is also a question of law to be determined by the court.").

In this case, it is abundantly clear that probable cause existed to charge Reed with obstruction under Montana law. The obstruction statute involved provides as follows:

> **Obstructing peace officer or other public servant.** (1) A person commits the offense of obstructing a peace officer or public servant if the person knowingly obstructs, impairs, or hinders the enforcement of the criminal law, the preservation of the peace, or the performance of a governmental function, including service of process.

23

§ 45-7-302(1), Mont. Code Ann.

In this case, it is undisputed that on May 23, 2012, the Montana DOL was performing a governmental function involving the hazing of bison from the area of the Madison Arm Resort eastward across Hwy 191, and back into Yellowstone National Park. The defendant Deputy Doug Lieurance of the Gallatin County Sheriff's Office was providing law enforcement assistance in the hazing operation.

As the bison herd got closer to Hwy 191, Deputy Lieurance was instructed to locate his law enforcement vehicle at a designated point on the north side of the Madison River in preparation for shutting down southbound traffic on Hwy 191. DOL Agent Rob Tierney, the Bison Program Manager for the DOL, had located his vehicle at a point on the south side of the Madison River where Conservation Lane intersects with Hwy 191 in preparation for shutting down northbound traffic on the highway. The objective was to establish and maintain a safe and sufficiently wide corridor for movement of the bison across Hwy 191.

DOL Agent Tierney instructed Reed that he could locate his vehicle on either the north or south ends of the highway behind the blockading law enforcement vehicles, but that he could not park between them or within the corridor they were establishing over Hwy 191. An obstruction such as a parked motor vehicle in the corridor could distract the buffalo and cause them to go in different directions, and conceivably back into the oncoming horseback riders. In

24

addition, it could put the buffalo, as well as the inhabitants of the vehicle, in harm's way.

Despite being so instructed, Reed nevertheless parked between the two blockading law enforcement vehicles, and within the corridor they were trying to establish. DOL Agent Tierney radioed Deputy Lieurance and informed him of the situation. He also informed Deputy Lieurance that he had "explicitly" told Reed 3 times that he could not park within the corridor that was being established over Hwy 191, and between the two blockading law enforcement vehicles.

At approximately 0918, Deputy Lieurance had to instruct the horseback riders to stop the hazing operation so he could go speak with Reed, and have him remove his vehicle from that location. Once Reed had moved his vehicle, and DOL Agent Tierney and Deputy Lieurance were back in position for stopping traffic, the hazing operation was recommenced.

Given the facts and circumstances with which Deputy Lieurance was confronted, probable cause plainly existed to cite Reed with misdemeanor obstruction in violation of § 45-7-302(1), Mont. Code Ann. Despite "explicit" instructions, Reed knowingly parked his vehicle between the two law enforcement vehicles and within the corridor which was being established over Hwy 191. Because his wrongful presence at that location resulted in Deputy Lieurance having to instruct the horseback riders to stop the bison haze, Reed plainly

"obstruct[ed], impair[ed], or hinder[ed] . . . the performance of a governmental function" under § 45-7-302(1). The issuance of the obstruction citation was not constitutionally defective, and the plaintiff's Fourth Amendment claim failed as a matter of law.

Alternatively, because qualified immunity protects all "but the plainly incompetent or those who knowingly violate the law," a law enforcement officer will be immune to claims based on an arrest without probable cause unless "it is obvious that no reasonably competent officer" would have believed that there was probable cause to arrest. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *see also Crowe v. County of San Diego*, 608 F.3d 406, 434 (9th Cir. 2010)(law enforcement officers entitled to qualified immunity "because they could have reasonably believed that probable cause existed"). Here, given the totality of the facts and circumstances involved, a reasonable officer could have believed that probable cause existed to cite Reed with misdemeanor obstruction in violation of § 45-7-302(1), Mont. Code Ann. As such, and notwithstanding the clear existence of probable cause in this case, Deputy Lieurance would be entitled to qualified immunity on the plaintiff's Fourth Amendment claim.

### C.   The District Court Properly Rejected the Plaintiff's *Monell* Claims.

In Claim Four of his Complaint, the plaintiff had asserted *Monell* claims based upon theories of failure to train and unconstitutional policies. Complaint, ¶¶ 121-122. The *Monell* claims failed for a number of reasons, and the District Court appropriately granted summary judgment on those claims. *Order, July 23, 2014* **[SER E; CR 45]**. "In reviewing decisions of the district court, [this Court] may affirm on any ground supported by the record." *Trimble v. City of Santa Rosa*, 49 F.3d 583, 584 (9th Cir. 1995).

First, Deputy Lieurance was more than adequately trained on the parameters of the First and Fourth Amendments, as well as the application of Montana's obstruction statute. The undisputed evidence is that Deputy Lieurance received BASIC police academy training and was certified through the Arizona Law Enforcement Academy. *Lieurance Depo*., p. 15 **[SER K; CR 15-4]**. Because of the prior certification, he attended an equivalency program through the Montana Law Enforcement Academy (MLEA). *Id*. at pp. 15-16. The MLEA's BASIC and equivalency programs involve training on the First Amendment. *Springer Depo*., p. 20 **[SER J; CR 15-5]**. Deputy Lieurance received training on First Amendment issues during the MLEA equivalency program. *Id*. at p. 22.

The MLEA's BASIC and equivalency programs also involved training on probable cause and the Fourth Amendment. *Springer Depo.*, at pp. 33-34 **[SER J;**

27

**CR 15-5]**. In addition to the training they receive at the MLEA, deputies receive specific training on probable cause issues during GCSO's field training programs. *Id*. at p. 34. The construction and application of Montana's obstruction statute is also addressed during the field training programs. *Id*. at pp. 38, 43. Deputy Lieurance received specific training on the obstruction statute during the field training programs. *Lieurance Depo*., p. 30 **[SER K; CR 15-4]**.

Moreover, the adequacy of Deputy Lieurance's training on these various issues was aptly reflected during his deposition, when he was answering questions posed by plaintiff's counsel:

> Q. A police officer is not allowed to arrest without probable cause, right?
> A. Correct.
> Q. And a police officer is not allowed to unreasonably restrict someone's First Amendment rights, correct?
> A. Correct.
> Q. And a police officer is not allowed to retaliate against someone for exercising their First Amendment rights, correct?
> A. Correct.

*Lieurance Depo*., p. 26. Indeed, the plaintiff's own expert candidly conceded that Deputy Lieurance was knowledgeable on First Amendment principles relevant to this case:

> Deputy Lieurance acknowledged his understanding of basic First Amendment principles, specifically, that law enforcement officers cannot restrict the exercise of First Amendment rights, nor can they retaliate when someone chooses to exercise those rights.

*Plaintiff's Expert Report*, ¶ 62 **[Doc. 22-4]**.

28

Secondly, the plaintiff produced no evidence below which demonstrated the requisite "deliberate indifference" standard necessary to support his *Monell* claims. A *Monell* claim, whether for a municipal policy or for failure to train, must demonstrate "deliberate indifference" on the part of the County. Only in "limited circumstances" can a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights rise to the level of an "official government policy" for purposes of § 1983. *Connick v. Thompson*, ___ U.S. ___, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id*. Thus, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" *Id*. (*quoting Canton v. Harris*, 489 U.S. 378, 388 (1989)).

As the Supreme Court reiterated in *Connick*, "'[d]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 131 S.Ct. at 1360 (*quoting Bd. of Cnty. Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 410 (1997)). Disregarding "a known or obvious consequence" means "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights[.]" *Id.* at 1360

(*citing Bryan County*, 520 U.S. at 407).

In turn, to prove "actual or constructive notice" of a constitutionally –

significant gap in training, it is "ordinarily necessary" to demonstrate "a pattern of

similar constitutional violations by untrained employees." *Connick*, 131 S.Ct. at

1360 (*citing Bryan County*, 520 U.S. at 409). "Without notice that a course of

training is deficient in a particular respect, decisionmakers can hardly be said to

have deliberately chosen a training program that will cause violations of

constitutional rights." *Id*. "A less stringent standard of fault for a failure-to-train

claim 'would result in *de facto respondeat superior* liability on municipalities." *Id*.

(*quoting Canton*, 489 U.S. at 392).

Aside from merely alleging that the defendants acted with "deliberate

indifference" with respect to the challenged policy and alleged failure to train, *see

Complaint*, ¶ 124, the plaintiff wholly failed to come forward with evidence

demonstrating a pattern of constitutional violations or circumstances indicating that

the "need for more or different training is so obvious, and the inadequacy so likely

to result in the violation of constitutional rights, that the policymakers of the

[County] can reasonably be said to have been deliberately indifferent to the need."

*Canton*, 489 U.S. at 390.

Finally, this Court can affirm the District Court's rejection of the *Monell*

claims on the basis that no constitutional right was violated in this case. Having

failed to establish a constitutional violation by Deputy Lieurance, the plaintiff cannot establish a § 1983 *Monell* claim against the governmental entities involved. *See Jackson v. City of Bremerton*, 268 F.3d 646, 653-54 (9th Cir. 2001)("Neither a municipality nor a supervisor . . . can be held liable under § 1983 where no injury or constitutional violation has occurred.") (*citing City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

> ### D. The District Court Did Not Abuse its Discretion in Denying Leave to Amend the Complaint.

In his opening brief, the plaintiff contends that the District Court dismissed *sua sponte* the *Monell* claims under Rule 12(b)(6). He argues that he was entitled to amend his *Monell* claims in order to replead them with greater specificity. The plaintiff's contention and argument are baseless, and he improperly misrepresents the District Court's ruling.

While the District Court noted that the plaintiff's *Monell* claims were deficiently pleaded under the pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it is clear that the court dismissed the plaintiff's *Monell* claims *on summary judgment grounds*. See *Order, July 23, 2014* **[SER E; CR 45]**. "Roughly speaking, summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Allstate Prop. and Cas. Ins. Co. v. Mirkia*, 2014 WL 2801310, at *9 (D. Nev. June

19, 2014) (*quoting Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). Here, the plaintiff failed to come forward with admissible probative evidence demonstrating the requisite "deliberate indifference" standard necessary to support his *Monell* claims. Because summary judgment was granted on those claims, he was obviously precluded from attempting to amend them.

In any event, the District Court did not abuse its discretion in denying leave to amend the complaint. As the District Court appropriately noted, the plaintiff failed to move under Fed. R. Civ. P. 16 for amendment of the applicable provisions of the District Court's Scheduling Order, namely the deadline for amending pleadings which lapsed a year earlier on November 15, 2013. Moving to amend the Scheduling Order under Rule 16 is a prerequisite to consideration of a motion to amend under Rule 15. "Once the district court [files] a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which establishe[s] a timetable for amending pleadings[,] that rule's standards control[ ]." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294-95 (9th Cir. 2000). Here, the District Court appropriately determined that "[a]bsolutely no good cause has been demonstrated" for amending the Scheduling Order under Rule 16. *Order, October 6, 2014, p. 5* **[SER D; CR 68]**.

Furthermore, the plaintiff failed to comply with a local rule applicable to motions to amend. L.R. 15.1 states as follows: "When a party moves for leave to amend . . . , the proposed pleading *must* be attached to the motion as an exhibit." (Emphasis added). Here, it is undisputed that the proposed pleading was *not* attached to the plaintiff's motion. <u>See</u> **CR 50**. The District Court has discretion to deny a motion to amend for the failure to attach a proposed pleading as required by the local rule. *Waters v. Weyerhaeuser Mortg. Co.*, 582 F.2d 503, 507 (9th Cir. 1978); *see also Ward v. Circus Circus Casinos, Inc.,* 473 F.3d 994, 1000 (9th Cir. 2007) ("The [plaintiffs'] motion to amend violated the local rules, and the district court may in its discretion deny their motion on that basis alone.").

## E.    The Exclusion of Plaintiff's Expert Timothy Longo Was Not an Abuse of Discretion.

This Court reviews the District Court's decision to admit or exclude expert testimony for an abuse of discretion. The trial judge is charged with the "gatekeeping" duty of ensuring that an expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). "It is very much a matter of discretion with the trial court whether to receive or exclude the evidence" and appellate courts should "not reverse in such a case unless the ruling is manifestly erroneous." *United States v. Cordoba*, 194 F.3d 1053, 1056 (9th Cir. 1999) (citations omitted).

Rule 702, Fed.R.Evid., states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto." The United States Supreme Court has stated that "'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). If proffered expert testimony is no more than unsupported speculation, ***the trial judge should exclude it***. Id. at 592-93. *See Reiner v. Warren Resort Hotels, Inc.*, 2008 WL 5120682, at *6 (D. Mont. Oct. 1, 2008) (Rule 702 "provides that expert testimony on any subject must be based on specialized knowledge, and opinions based on unsupported speculation and subjective belief are subject to exclusion pursuant to the court's gatekeeping duty to ensure that only reliable evidence is admitted.") (emphasis added).

An expert opinion must also not be based on assumptions of fact without evidentiary support. *See Nuveen Quality Income Mut. Fund, Inc. v. Prudential Equity Group, LLC*, 262 Fed.Appx. 822, 824 (9th Cir. 2008) ("An expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts."); *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 830-31 (9th Cir. 2001) (expert opinion properly excluded because "it was not sufficiently founded on [the] facts" of the case).

Here, and according to his 58-page expert report **[Plaintiff's ER 205-262]**, Mr. Longo intended to express opinions and testimony based upon his subjective beliefs, unsupported speculation, and facts not supported by the record. Indeed, in his expert report, Mr. Longo literally went out of his way to utterly ignore facts of record which directly contradicted his proffered opinions and testimony in this matter.

In its Order excluding Mr. Longo's testimony, the District Court thoroughly explained the grounds for his decision. *Motions Tr. at 67:9 – 76:12* **[SER F; CR 44]**. The basic premise for the District Court's decision is generally summarized as follows:

> I'll start with the fact that the report is literally filled with what are characterized as facts, and these are facts that appear, from all that is written, to be the facts upon which opinions to be given would be based, but these matters of fact, as they are characterized, are not in the record yet, or at all, and could not be relied upon if they are not, in fact, proven at trial.

*Id. at 71:21 – 72:4*. The District Court's decision was based on established Ninth Circuit law. *Guidroz-Brault*, 254 F.3d at 830-31.

Furthermore, Mr. Longo's opinions regarding "generally accepted law enforcement practices" did not "fit" the constitutional issues involved in the case. "Under Rule 702, for expert testimony to be relevant it must be sufficiently tied to the facts of the case so that it is of assistance to the trier of fact in resolving a disputed issue." *Johnson v. American Honda Motor Co., Inc.*, 923 F.Supp.2d

1269, 1277 (D.Mont. 2013) (*citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993)).  "In other words, the expert's opinion must 'fit' the facts of the case and serve a 'helpful' purpose to the jury." *Id*. at 1277 (*citing Daubert*, 509 U.S. at 591).  The "fit" requirement requires the Court to ensure that the proposed expert testimony is "relevant to the task at hand," i.e., that it "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1315 (9th Cir. 1995). *See also Haflich v. McLeod*, 2011 WL 65877, at *1 (D.Mont. 2011) ("The opinions must 'fit' the facts of the case and serve a 'helpful' purpose to the jury, and there must exist 'a link between the expert's testimony and the matter to be proved.'") (*quoting Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007)).  Here, the proffered testimony and opinions of plaintiff's expert, Timothy Longo, did not "fit" the constitutional issues involved in the case, and was therefore subject to exclusion for failure to satisfy the requirements of Fed.R.Evid. 702.

In *Smith v. State of New Jersey*, 2013 WL 3658786 (D.N.J. 2013), the testimony of plaintiff's expert, Timothy Longo, was excluded for the same reasons it was properly excluded in this case.  In *Smith*, a civil rights action involving, as here, alleged constitutional violations under 42 U.S.C. § 1983 by law enforcement personnel, Mr. Longo submitted on behalf of the plaintiff an expert report which

36

was substantially identical to the one which he has submitted in this case. The Court excluded the testimony of Mr. Longo, concluding as follows:

> The Court will preclude Longo's testimony because he expresses opinions that are simply the application of constitutional law to the facts of the case and thus usurp the province of the Court and because he speculates about the police officers' state of mind in ways that are unhelpful to the fact-finder, are not reliable, and are not based upon specialized knowledge.

*Smith,* 2013 Wl 3658786, at *1. In *Smith*, the Court went on to discuss the various deficiencies in Mr. Longo's expert report and proffered testimony, which deficiencies are equally applicable to his report and proffered testimony in this case. *See id*. at **2-4.

Of particular significance with respect to Mr. Longo's report and proffered testimony in this case, the Court in *Smith* held as follows:

> <u>Most importantly, Chief Longo's opinions about "generally accepted policing practice and standards," which comprise largely his entire report, do not fit the issues in this case</u>. No issue in this case depends on establishing normal police practices or a deviation therefrom; the standards of conduct are measured by the U.S. Constitution and by the analogous provisions of the New Jersey Constitution. These provisions do not constitutionalize tort law; whether a particular officer followed accepted police practices is not the inquiry. A policeman may act or react in violation of desirable standards of police conduct without necessarily violating the constitution, and vice versa. Ultimately, determining the constitutional standards is a function of the judge, and no other standards apply to the remaining claims to be tried.

*Smith*, 2013 WL 3658786, at *5 (emphasis added).

37

Such was precisely the situation in this case as well.  The plaintiff here did *not* assert a negligence claim against the Gallatin County Defendants to which generally accepted law enforcement practices, or opined deviations therefrom, may be relevant.  *See*, *e.g.*, *Powell v. Union Pac. Railroad Co.*, 2013 WL 1857893, at *1 (E.D.Cal. 2013) (conduct outside "generally accepted industry standards and practices" constitutes negligence).  Rather, and as was the case in *Smith*, the plaintiff asserted *only* constitutional claims against the Gallatin County Defendants under 42 U.S.C. § 1983.  As such, and to paraphrase the Court in *Smith*, "the standards of conduct are measured by the U.S. Constitution and by the analogous provisions of the [Montana] Constitution."  *Id.* at *5.

Nevertheless, Mr. Longo's entire expert report focused *solely* on whether, in his opinion, the defendants' conduct in this case *deviated from generally accepted law enforcement practices*.  Indeed, Mr. Longo identified the two (2) issues to which he was to proffer expert testimony in this case as follows:

**Questions Presented**

31.   Whether the actions taken by Deputy Doug Lieurance on the morning of May 23, 2012, <u>were consistent with generally accepted law enforcement practices at the time of the incident.</u>

32.   Whether the policies, training, and supervision of the Gallatin County Sheriff's Office <u>were consistent with generally accepted law enforcement practices at the time of this incident.</u>

*Expert Report*, ¶¶ 31-32 **[Plaintiff's ER 212]**.[3] Mr. Longo then goes on to express throughout his report his "opinions" that various actions, policies, and practices of the Gallatin County Defendants were "inconsistent with generally accepted law enforcement practices at the time of this incident." *See Expert Report,* ¶¶ 82, 119, 165, 200, 236, 240, 252, 260, 264, 268.

As was the case in *Smith*, Mr. Longo's opinions about "generally accepted law enforcement practices," or alleged deviations therefrom, which comprise the entirety of his report, did not "fit" the constitutional issues involved in this case. No issue in this case depended upon establishing standard or accepted law enforcement practices, or alleged deviations therefrom. Instead, the standards of conduct applicable to the case were measured by the U.S. Constitution and by the analogous provisions of the Montana Constitution. Ultimately, a determination of those constitutional standards was a function of the District Court. As such, and as

---

[3] Notably, Mr. Longo also stated in his report the following:

> 33. I have not been asked to offer an opinion as to whether probable cause existed to believe Mr. Reed was in violation of Montana Law.

> 34. I have not been asked to opine as to whether Deputy Lieurance's actions and the policies and practices of the Gallatin County Sheriff's office run afoul [of] the Constitution of the United States of America.

> 35. These two important and fundamental questions are outside the purview of my expert opinion and fall squarely within the province of the court. . . .

*Expert Report*, ¶¶ 33-35.

was the case in *Smith*, Mr. Longo's proffered opinions were simply not relevant or helpful to the trier of fact in this case, and they thus failed to satisfy the requirements of Fed.R.Evid. 702. The District Court property prohibited Mr. Longo from testifying in the case.

### F. Viewing the Evidence in the Light Most Favorable to the Plaintiff, No Reasonable Juror Could Have Found that the Restrictions Involved Here Ran Afoul of the First Amendment.

On January 7, 2015, and at the close of the plaintiff's case, the District Court granted judgment as a matter of law to the defendants/appellees on the plaintiff's First Amendment claim. The District Court determined that "the evidence is without dispute" that the corridor over Hwy 191 "was established with good and sound reason for safety purposes. . . . And that includes safety to the public, the people who were involved in the movement of the animals, and presumably even the animals themselves. That component of this record is simply in no way challenged." *Tr. at 363:6-12* **[SER H]**.

The District Court specifically noted that Deputy Lieurance did not himself impose the restrictions, and that the exclusion of vehicular traffic from the corridor was narrow in time:

> It is also clear and without dispute that it was not the defendant who established the corridor from which people were to be excluded, that is, vehicular traffic was to be excluded, while this haze operation, in part, was occurring. This exclusion time - - by the record, I think, clear - - was set up to start when the animals neared the highway and was to continue until the animals, the bison, or buffalo, had crossed

the highway and had progressed east, either away from the highway or into, inside the boundaries of Yellowstone National Park.

*Tr. at 363:13-22.*

The District Court found that the presence of the plaintiff's vehicle within

the corridor indisputably posed a risk to the safety of the hazing operation:

> There's also undisputed testimony in this record that this vehicle's presence was, by the testimony, an interference with the movement of the haze operation; that it presented a danger to the safety of the operation in general, at least a potential danger to persons who were in or near the parked vehicle; and, as a component of all of that assessment, it was not certain, and even, indeed, not specifically known where these animals would elect to cross [the highway]. And the record seems to be without dispute that they were going to be allowed to cross wherever they chose.

*Tr. at 365:12-21.*

The District Court specifically rejected the premise underlying the plaintiff's

supposed First Amendment claim, stating:

> The basic premise of the plaintiff in this case is that the violation occurred when he was not allowed to stay where he chose to be parked north of the Madison River Bridge and that that is the test to be applied in deciding whether or not his constitutional rights were infringed upon.
>
> That is not the test. The test to be applied is whether the government's action, that is, the establishment of the parameters of no-drive, and the obligation to see that those parameters were observed during this haze operation were reasonable. That's the test. It's not where the man parked his car. It's whether the government's restrictions upon his capacity to park there were reasonable.

*Tr. at 367:9-21.*

The Court concluded that the restrictions imposed were reasonable and, further, that the plaintiff had available alternative means by which to observe the haze cross Hwy 191:

> And after reviewing this evidence, it is clear to the Court that not only were the establishment of the parameters of the corridor reasonable for safety reasons, and not only were the enforcement by the government officers of limitations in time and location reasonable, the evidence is also clear that the plaintiff was given the opportunity, at least at the south end of this no-drive zone, to have placed his vehicle at a location where he could have exercised his options to view the haze operation as it crossed the highway.

> I find that, on this record, there's no real dispute but that the corridor and the establishment of this corridor was reasonable, and I find that the officer's actions in insisting that those corridor restrictions be observed were reasonable. And I do not, in all frankness, find any basis for criticism of the safety precautions that were taken by the officials prior to the events in question.

*Tr. at 368:1-16.*

Rule 50 provides that the court may declare judgment as a matter of law against a party who "has been fully heard on an issue during a jury trial [when] the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P. 50 (a)(1). "Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008) (*quoting Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002)). "In other words, '[a] motion for a judgment as a matter of law is properly granted only if no

reasonable juror could find in the non-moving party's favor.'" *Id.* at 1205 (*quoting El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1072 (9th Cir. 2005)).

Here, viewing the evidence in the light most favorable to the plaintiff, no reasonable juror could have found that the restrictions involved ran afoul of the First Amendment. Consequently, the judgment which the District Court entered on the First Amendment claim was entirely appropriate.

Under the First Amendment, the plaintiff has a protected speech right to observe and videotape matters of public interest. *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995)(recognizing a "First Amendment right to film matters of public interest"). "[T]he government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,* 657 F.3d 936, 945 (9th Cir. 2011)(en banc)(citation and internal quotations omitted). *See also United States v. Griefen,* 200 F.3d 1256, 1259-60 (9th Cir. 2000)("When expressive conduct occurs on public grounds, like a national forest, the government can impose reasonable time, place, and manner restrictions. . . . Such restrictions are constitutionally valid if they are (1) content-neutral, (2) narrowly tailored to serve a

43

significant governmental interest, and (3) leave open ample alternatives for communication.")(citations and internal quotations omitted).

### (i)    Content Neutrality

"The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "The government's purpose is the controlling consideration." *Id.*  Restrictions on where individuals may demonstrate are not based on disagreement with the message conveyed if those restrictions "apply equally to all demonstrators, regardless of viewpoint." *Hill v. Colorado,* 530 U.S. 703, 719 (2000).  *See also Griefen*, 200 F.3d at 1260 (temporary closure of national forest content-neutral where "[i]t excluded all members of the general public; not just the protestors").

The restrictions placed on where Reed could park his vehicle were unquestionably content-neutral.  *Nobody* was permitted to park their vehicles within the corridor which the DOL was establishing over Hwy 191.  In addition, *all* members of the general public who may be travelling on Hwy 191, including the plaintiff and his fellow BFC activists, were required to remain behind the blockading law enforcement vehicles until after the hazing operation crossed over Hwy 191.

44

### (ii)    Narrowly Tailored to Serve a Significant Government Interest

"[T]he government has a significant interest in maintaining public order; indeed this is a core duty that the government owes its citizens.  The Supreme Court has declared that '[i]t is a traditional exercise of the States' police powers to protect the health and safety of their citizens.'"  *Menotti v. City of Seattle*, 409 F.3d 1113, 1131 (9th Cir. 2005)(*quoting Hill*, 530 U.S. at 715).  "A narrowly tailored requirement need not be the least restrictive means of furthering the [government's] interests, but the restriction may not burden substantially more speech than necessary to further the interests."  *United States v. Baugh,* 187 F.3d 1037, 1043 (9th Cir. 1999)(*citing Ward*, 491 U.S. at 799).

The restrictions placed on where Reed could locate his vehicle also served significant governmental interests and were narrowly tailored.  The governmental defendants had two significant interests at stake:  (1) the effective and efficient hazing of the bison across Hwy 191 and back into Yellowstone National Park; and (2) the safety of all individuals including those involved in the hazing operation, members of the viewing public, and individuals traveling on Hwy 191, as well as the bison themselves.  The plaintiff was simply not permitted to park his vehicle between the two blockading law enforcement vehicles, and within the corridor which the DOL was establishing over Hwy 191.  It was undisputed that an obstruction such as a parked motor vehicle in the corridor could cause unwanted

45

complications with the hazing operation. In addition, it could put the inhabitants of the vehicle in harm's way.

The restrictions were also narrowly tailored. The safety corridor which was established over Hwy 191 extended only for approximately 0.9 miles. The corridor had to be sufficiently wide to accommodate the unpredictability of where the haze would actually cross the highway. If the corridor they were establishing was not sufficiently wide, and the bison haze happened to cross Hwy 191 at a point *outside* the corridor, the safety of members of the traveling public would obviously be endangered. As the District Court found, the exclusion of vehicular traffic from the corridor was also narrow in time duration.

### (iii) **Alternative Channels of Communication**

It is undisputed that the restrictions on where the plaintiff could locate his vehicle along Hwy 191 left open ample alternatives for viewing and videotaping the bison haze. "In the 'ample alternatives' context, the Supreme Court has made clear that the First Amendment requires only that the government refrain from denying a 'reasonable opportunity' for communication." *Menotti*, 409 F.3d at 1141 (*citing City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54 (1986)).

The plaintiff, other BFC activists, and members of the public were not prohibited from viewing and videotaping the bison haze. As the subpoenaed BFC video footage **[Defendants' Trial Exhibit 12]** of the hazing operation on that date

46

conclusively demonstrates, ample opportunities existed by which to view and videotape the haze. While the plaintiff claims he could not see the haze cross Hwy 191 from behind Deputy Lieurance's blockading law enforcement vehicle on the northern end of Hwy 191, it is undisputed that he *could have observed* the hazing operation cross Hwy 191 if he had chosen instead to either follow behind the hazing operation (as did two other members of the BFC), or if he had parked on the south end of Hwy 191 behind DOL Agent Tierney's blockading law enforcement vehicle.

In sum, no reasonable juror could have found that the restrictions placed on where Reed could locate his vehicle along Hwy 191 during this hazing operation somehow ran afoul of the First Amendment. The DOL's restrictions were unquestionably content-neutral; they were narrowly tailored to serve a significant government interest; and they left open ample alternatives for viewing and videotaping the bison haze on May 23, 2012. The District Court appropriately granted judgment as a matter of law on the First Amendment claim at the close of the plaintiff's case.

### G.   **The Plaintiff Failed to Produce a Sufficient Evidentiary Basis From Which a Reasonable Juror Could Find That a Retaliatory Animus Was the "But-for Cause" of Deputy Lieurance's Conduct.**

Reed had alleged that Deputy Lieurance retaliated against him for exercising his First Amendment rights by threatening to physically arrest Reed and his

passenger and take them to jail. In order to demonstrate retaliation in violation of the First Amendment, a plaintiff must produce evidence that demonstrates "that the [defendant's] conduct would chill a person of ordinary firmness from future First Amendment activity." *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013)(*citing Skoog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006)). However, "[a] plaintiff may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives." *Mendocino Envtl. Ctr. v. Mendocino County*, 14 F.3d 457, 464 (9th Cir. 1994) (internal quotations and citation omitted). Rather, "the evidence must enable [the plaintiff] ultimately to prove that the [defendant's] desire to chill his speech was a but-for cause of [his] allegedly unlawful conduct." *Ford*, 706 F.3d at 1193. *See also Lacey v. Maricopa County*, 693 F.3d 896, 917 (9th Cir. 2012) (the plaintiff must produce evidence "ultimately enabling him to prove the elements of retaliatory animus as the cause of injury, with causation being understood to be but-for causation").

It is patently undisputed, however, that the jail threat emanated from the fact that, after receiving the citation, Reed was *not moving his vehicle from its location within the corridor*, and its continued obstructed presence was preventing recommencement of the bison hazing operation. Moreover, it is patently undisputed that "there [was] some urgency in getting Mr. Reed to leave that

48

location." *Tr. at 341:14-15* **[SER H]**.  Although the haze itself had been stopped, the bison herd which was in close proximity to Hwy 191 were "still moving" towards Hwy 191.  *Id.*  Consequently, it was imperative that Agent Tierney and Deputy Lieurance "get back in position in order to stop traffic on Highway 191." *Id. at 342:1-3*.

Any desire on Deputy Lieurance's part to "chill" Reed's First Amendment rights was plainly not the "but-for" cause of his conduct, and no reasonable juror could so find.  As the District Court succinctly stated during it's Rule 50 ruling:

> When one looks at this record in its entirety, which the Court is obliged to do under the provisions of Rule 50, when it's all taken in context, my conclusion is that this exchange, whatever it may be said to have been, does not rise to the level of meeting the requirements of the but-for test that are necessary to establish a retaliation claim.

*Tr. at 371:7-12.*

### H. Judgment on the First Amendment and Retaliation Claims Was Also Proper Because the Plaintiff Was Not Engaged in Conduct Protected under the First Amendment.

As an alternative ruling, the District Court concluded that Reed's First Amendment and retaliation claims failed because he was not at the time engaged in expressive conduct protected under the First Amendment.  Ninth Circuit caselaw recognizes a distinction between verbal opposition to police conduct, protected under the First Amendment, and conduct that obstructs legitimate police action, which is not protected expression under the First Amendment.  In *Young v. City of*

49

*Los Angeles*, 655 F.3d 1156 (9th Cir. 2011), the plaintiff was arrested for refusing to comply with a law enforcement officer's orders requesting that he reenter his vehicle during a traffic stop. *Id*. at 1169. The plaintiff challenged his arrest on the grounds that his repeated statements of refusing to comply with the officer's orders constituted acts of expression, and that the arrest therefore violated his First Amendment rights. The Ninth Circuit held that plaintiff's arrest did not violate his right of expression under the First Amendment because plaintiff's refusal to obey the law enforcement officer's lawful instructions was not an act of speech or expression protected by the First Amendment. *Id*. at 1170.

So it is in this case. Reed was threatened with physical arrest for his refusal to comply with law enforcement's lawful request that he remove his vehicle from its location within the safety corridor which was being established on Hwy 191. While Reed was free to verbally criticize (and, indeed, videotape) Deputy Lieurance as he carried out his official duties, he did not have a First Amendment right to refuse to comply with a lawful order to immediately remove his vehicle from that location.

As the District Court succinctly stated during its Rule 50 ruling:

But there is another and, in the view of the Court, more significant reason that this claim cannot go forward, and that is because the Court has concluded, as a matter of legal ruling, that the parameters established by the enforcement officials for the maintenance of safety during this hazing operation were reasonable and that Mr. - - the plaintiff's request to remain within this corridor were not protected

50

activities. He did not have the right to be there, by the Court's ruling, and if he did not have the right to be there, he has no basis for complaining that he is being obliged to leave there.

*Tr. at 371:20-372:5* **[SER H].** Deputy Lieurance was therefore entitled to judgment as a matter of law on Reed's First Amendment and retaliation claims.

## I.    The Plaintiff Failed to Object and, therefore, Waived Any Perceived Deficiencies in the Rule 50(a) Ruling.

The plaintiff argues that the District Court erred in granting the Rule 50(a) motion on grounds not specifically raised by the defendants, including its finding that the First Amendment restrictions involved here were reasonable as a matter of law, that the plaintiff was not engaged in conduct protected by the First Amendment, and that Deputy Lieurance was entitled to qualified immunity.[4] However, the plaintiff failed to object and therefore waived any perceived deficiencies in the District Court's Rule 50(a) ruling.

When a party moves for judgment as a matter of law, it is incumbent upon the non-moving party to timely object to any perceived defect in the motion, or in the District Court's ruling on the motion. *See, e.g., Graves v. City of Coeur D'Alene*, 339 F.3d 828, 838-39 (9th Cir. 2003) (holding that when a party does not object to its opponent's failure to strictly abide by Rule 50(a) in district court, the

---

[4]   The plaintiffs certainly cannot claim that the District Court's ruling that the First Amendment restrictions involved here were reasonable as a matter of law was unexpected. That particular issue was thoroughly addressed in the parties' trial briefs. *See* **CR 72, 74**.

procedural flaw is waived on appeal), *abrogated on other grounds* by *Hiibel v. Sixth Jud. Dist. Court*, 542 U.S. 177 (2004); *Wallace v. McGlothan*, 606 F.3d 410, 419 (7th Cir. 2010) ("A plaintiff's challenge to a defendant's failure to adhere to the procedural prerequisites of Rule 50(a) and (b) is waivable."); 9B C. Wright & A. Miller, *Federal Practice and Procedure* § 2537 (3d ed. 2008) ("[I]f the opposing party does not object to or specifically argue against the assertion of a new ground for seeking judgment as a matter of law, that party may have waived that defense to the grant of the motion on appeal."); *see also id.* at § 2533 ("[I]f the trial court grants the [Rule 50(a)] motion, an adverse party who did not object to the lack of any statement of grounds in the trial court may not raise this point in the appellate court.").

Indeed, the plaintiff on appeal specifically relies upon the case of *Summers v. Delta Air Lines, Inc.*, 508 F.3d 923 (9th Cir. 2007), in support of the proposition that a district court should not grant judgment as a matter of law on legal bases neither raised in defendant's Rule 50(a) motion nor otherwise previewed to plaintiff by the district court. Significantly, however, the plaintiff in *Summers specifically objected* to the district court's Rule 50(a) ruling:

> After a five-minute recess, the district court granted judgment as a matter of law to Defendants. The legal bases for the decision, however, were different from those raised in Defendants' motion. <u>Plaintiff immediately objected, but the district court stood by its ruling</u>.

52

*Summers*, 508 F.3d at 925 (emphasis added); *see also id.* at 927 ("Plaintiff's

lawyer <u>immediately objected</u> that 'there was no motion made on this legal basis.'")

(emphasis added).

 Although he now claims error on appeal, it is undisputed that the plaintiff

wholly *failed to object* to the District Court's Rule 50(a) ruling.  It was incumbent

that he do so before claiming error on appeal as he does now.  As the First Circuit

has succinctly stated:

> In general, the law ministers to the vigilant, not to those who sleep
> upon perceptible rights.  Consequently, a litigant who deems himself
> aggrieved by what he considers to be an improper occurrence in the
> course of trial or an erroneous ruling by the trial judge ordinarily must
> object then and there, or forfeit any right to complain at a later time.
> The policy reasons behind the raise-or-waive rule are rock solid:
> calling a looming error to the trial court's attention affords an
> opportunity to correct the problem before irreparable harm occurs.
> Then, too, the raise-or-waive rule prevents sandbagging; for instance,
> it precludes a party from making a tactical decision to refrain from
> objecting, and subsequently, should the case turn sour, assigning error
> (or, even worse, planting an error and nurturing the seed as insurance
> against an infelicitous result).  So viewed, the requirement that parties
> raise contemporaneous objections to improper questions, comments,
> and the like serves an important purpose in promoting the balanced
> and orderly functioning of our adversarial system of justice.

*United States v. Taylor*, 54 F.3d 967, 972 (1st Cir. 1995) (citations and internal

quotations omitted); *see also Williams v. Runyon*, 130 F.3d 568, 572 (3d Cir. 1997)

("The need to preserve the issue through a proper objection in the context of Rule

50 is to ensure that both parties are aware of and can raise dispositive issues earlier

in the proceeding rather than later, so that the district court can resolve the issues

correctly and without delay.  This is just as true when a plaintiff opposes a Rule 50(b) motion as when a defendant moves for a directed verdict under Rule 50(a).").

The District Court admittedly granted judgment as a matter of law on additional legal bases not specifically raised in defendants' oral Rule 50(a) motion. The plaintiff, however, *failed to object* to the District Court's Rule 50(a) ruling, and did not otherwise afford the District Court an opportunity to correct what the plaintiff now perceives to be errors on appeal.  As such, the plaintiff failed to preserve the issues and has waived any perceived deficiencies in the District Court's Rule 50(a) ruling.

## II.    <u>The District Court Erred in Not Awarding the Defendants their Attorney's Fees</u>.

In determining whether to award attorney's fees to a prevailing defendant in a § 1983 action, a court considers whether the plaintiff's claims were "unreasonable, frivolous, meritless, or vexatious."  *Galen v. County of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007) (*quoting Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994)).  A defendant can recover "if the plaintiff violates this standard at any point during the litigation, not just at its inception." *Id.* at 666.  A case may be deemed frivolous when "the 'result is obvious or the . . . arguments of error are wholly without merit.'"  *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003) (citation omitted).

In moving for attorney's fees under 42 U.S.C. § 1988, a defendant need not demonstrate the plaintiff's "subjective bad faith" to win an award of attorney's fees. *Harris v. Maricopa County Sup. Ct.*, 631 F.3d 963, 976 (9th Cir. 2011); *see also Jensen v. Stangel*, 762 F.2d 815, 817 (9th Cir. 1985) ("A prevailing defendant in a civil rights action is entitled to an attorney's fees award where plaintiff's action, even though not brought in subjective bad faith, is 'frivolous, unreasonable, or without foundation.'"). "[Section] 1988 serves to relieve a defendant of expenses attributable to frivolous charges. The plaintiff acted wrongly in leveling such allegations, and the court may shift to him the reasonable costs that those claims imposed on his adversary." *Fox v. Vice*, ___ U.S. ___, 131 S.Ct. 2205, 2214, 180 L.Ed.2d 45 (2011).

The applicable legal standard for awarding prevailing defendants their attorney's fees under 42 U.S.C. § 1988 is clearly satisfied with respect to *all* of the plaintiff's claims in this case. Notably, in considering whether the imposition of attorney's fees is warranted under §1988, a plaintiff is charged with knowledge of what "a reasonable inquiry into the applicable facts and law" would have shown. *Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998).

Here, it is readily apparent that the plaintiff and his attorneys did *not* make a reasonable inquiry into the applicable facts underlying his claims. Indeed, although the bison haze was being conducted by the Montana Department of

Livestock (DOL) and the DOL employees involved would obviously be percipient witnesses, it was learned during the trial that the plaintiff and his two attorneys made *absolutely no effort* to contact those employees in order to learn and understand the salient facts surrounding the bison haze that occurred on May 23, 2012:

> Q.  (BY MR. MILCH) Agent Tierney, did the plaintiff's attorneys ever ask to meet with you and discuss what your testimony might be?
> A.  No, they have not, ever.
> Q.  They didn't contact you at all, did they?
> A.  No, they did not.

*Trial Tr. at 285:4-8* (Rob Tierney testimony).

> Q  (BY MR. MILCH) Did the plaintiff's attorneys ever ask to meet with you and ask to discuss your testimony here today?
> A  No.

*Trial Tr. at 217:6-8.* (Jeff Mount testimony). Had plaintiff's counsel made "a reasonable inquiry" into the facts known by the DOL witnesses, perhaps they would not have pursued the claims which they did.

With respect to his Fourth Amendment unlawful arrest claim in Count One and the corresponding Montana constitutional claim in Count Five, the Court concluded that there was no issue of material fact and that probable cause existed as a matter of law. A reasonable inquiry into the applicable facts and law would have revealed the insufficiency of those claims. *See Olsen v. Henderson*, 2014 WL 3661150, at *2 (D.Nev. July 23, 2014) (awarding fees to defendants and stating:

"The undisputed facts clearly demonstrate that probable cause existed. As such, . . . 'a reasonable inquiry into applicable facts and law would have shown insufficiency in claim as a matter of law.'") (*citing Margolis*, 140 F.3d at 854). The plaintiff's Fourth Amendment claim was frivolous and wholly without foundation.

The plaintiff's *Monell* claims fared no better. The plaintiff never produced *any evidence* of an unconstitutional policy or a County policy that could be said to have been violated. *See Motions Tr. at 64:7-10* ("On the record that's before this Court I don't have any evidence of a policy of the Sheriff's Office that was said to have been violated.") **[SER F; CR 44]**.

Regarding the *Monell* failure to train claim, the adequacy of Deputy Lieurance's training on Fourth Amendment, First Amendment, and First Amendment retaliation issues was aptly reflected during his deposition, when he was answering questions posed *by plaintiff's own counsel*:

Q.  A police officer is not allowed to arrest without probable cause, right?
A.  Correct.
Q.  And a police officer is not allowed to unreasonably restrict someone's First Amendment rights, correct?
A.  Correct.
Q.  And a police officer is not allowed to retaliate against someone for exercising their First Amendment rights, correct?
A.  Correct.

*Lieurance Depo.*, p. 26 **[SER K; CR 15-4]**. Indeed, the plaintiff's own expert

candidly conceded that Deputy Lieurance was knowledgeable on First Amendment

principles relevant to this case:

> Deputy Lieurance acknowledged his understanding of basic First
> Amendment principles, specifically, that law enforcement officers
> cannot restrict the exercise of First Amendment rights, nor can they
> retaliate when someone chooses to exercise those rights.

*Plaintiff's Expert Report*, ¶ 62 **[Doc. 22-4]**.  The plaintiff's *Monell* claims were

frivolous and wholly without foundation.

The plaintiff proceeded to trial on Count Two, Count Three, and Count Six.

After presenting the testimony of all his witnesses, including the plaintiff, the

plaintiff's attorneys rested their case.  Counsel for defendants then moved for

judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a), and argued that the

plaintiff had failed to present evidence in support of his claims.

The Court agreed and granted the motion.  In doing so, the Court stated that

"the evidence that bears upon the issues that the Court must resolve is essentially

undisputed," and presents "the question of whether that evidence affords a

sufficient evidentiary basis for maintaining the claims of the plaintiff." *Trial*

*Transcript (Tr.) at 361:21 – 362:3* **[SER H]**.  The Court concluded "that this case

fails on its face for a lack of proof." *Id*. *at 367:8-9*.  In addressing the First

Amendment claim, the Court found as follows:

> And after reviewing this evidence, it is clear to the Court that not
> only were the establishment of the parameters of the corridor
> reasonable for safety reasons, and not only were the enforcement by

the government officers of limitations in time and location reasonable, the evidence is also clear that the plaintiff was given the opportunity, at least at the south end of this no-drive zone, to have placed his vehicle at a location where he could have exercised his options to view the haze operation as it crossed the highway.

I find that, on this record, there's no real dispute but that the corridor and the establishment of this corridor was reasonable, and I find that the officer's actions in insisting that those corridor restrictions be observed were reasonable. And I do not, in all frankness, find any basis for criticism of the safety precautions that were taken by the officials prior to the events in question.

*Id*. at 368:1-16. In dismissing the First Amendment claim, the Court found "no violation of the plaintiff's constitutional First Amendment rights from the action that occurred." *Id*. at 368:17-19.

The Court next addressed the viability of the plaintiff's First Amendment retaliation claim. It found that Deputy Lieurance's statement concerning "the possibility of going to jail" cannot be "taken out of context," and must be considered based on "[t]he totality of the circumstances." *Tr. at 371:1-2*. The Court concluded that the proffered evidence "does not rise to the level of meeting the requirements of the but-for test that are necessary to establish a retaliation claim." *Id*. at 371:10-12.

The Court alternatively concluded that "the parameters established by the enforcement officials for the maintenance of safety during this hazing operation were reasonable and that Mr. - - the plaintiff's request to remain within this corridor were not protected activities. He did not have the right to be there, by the

Court's ruling, and if he did not have the right to be there, he has no basis for complaining that he is being obliged to leave there." *Tr. at 371:23 – 372:5.*

Accordingly, the Court granted the defendants' Rule 50(a) motion stating: "So my ruling on the retaliation claim is the same as the ruling on the First Amendment claim, and that is that there is not a sufficient evidentiary basis to submit this case on this claim to the jury." *Id. at 372:6-9.* In sum, the plaintiff's First Amendment and First Amendment retaliation claims were "frivolous, unreasonable, [and] without foundation," *Jensen*, 762 F.2d at 817, and warranted an award of attorney's fees to defendants for having to defend against those baseless claims.

## <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully requested that this Court affirm the District Court's substantive rulings on the plaintiff's claims in this lawsuit. This Court, however, should reverse the District Court's Order declining to award defendants' their attorney's fees, and remand for a determination of that amount.

Dated this 6th day of August, 2015.

               /s/  Steven R. Milch     
STEVEN R. MILCH
Crowley Fleck PLLP
P. O. Box 2529
Billings, MT 59103-2529

Attorneys for Defendants/Appellees/Cross-Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on August 6th, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Steven R. Milch
STEVEN R. MILCH

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C), F.R.A.P., I certify that this brief in support contains 14,622 words (as counted by Microsoft Word 2007), excluding caption, certificate of service and compliance, is double spaced and printed in at least 14 point font.

/s/ Steven R. Milch
STEVEN R. MILCH

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Defendants/Appellees/Cross-Appellants state that Case No. 15-35179 is a related case pending appeal in this Court and was consolidated with Case No. 15-35018 by Order of this Court on March 11, 2015.

/s/ Steven R. Milch
STEVEN R. MILCH